UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| RYAN M. WHITMORE, et al.<br><br>  Plaintiffs,<br><br>  v.<br><br>CBK RESORT HOLDINGS, LLC, individually and d/b/a Camelback Lodge and Aquatopia Indoor Waterpark, et al.,<br><br>  Defendants. | CIVIL ACTION NO. 3:21-cv-01606<br><br>(SAPORITO, M.J.) |

## MEMORANDUM

This matter is before the court on the plaintiffs' motion to compel production of the January 5, 2022, recorded statement of defendants' employee, Connor Kloiber (Doc. 29).

### I. Statement of Facts

In their complaint, the plaintiffs have alleged that on February 24, 2020, the plaintiff, Ryan M. Whitmore, fractured his neck at the defendants' indoor water park on the simulated wave amusement ride known as the "FlowRider."

Following the incident, the defendants prepared a consolidated report which included an account of the incident by the defendants'

employee, Connor Kloiber, who was stationed at the FlowRider at the time Mr. Whitmore sustained his injuries. In response to a request for production of documents, the defendants, without waiving objections, disclosed that Mr. Kloiber's recorded statement was taken on January 5, 2022, by defense counsel's agent, Argonaut Investigations. Further, in their response, the defendants maintained that Mr. Kloiber's statement was taken at the request of defense counsel and in anticipation of litigation. The defendants refuse to disclose Mr. Kloiber's statement on the basis that it is protected from production by virtue of the attorney work product doctrine as set forth in Fed. R. Civ. P. 26(b)(3). [1]

The plaintiffs argue that their investigator telephoned Mr. Kloiber to speak about the incident, and Mr. Kloiber directed all inquiries to counsel for the defendants. In addition, the plaintiffs contend that they have a substantial need in obtaining Mr. Kloiber's recorded statement because the case will turn on credibility and witness accounts, as Mr. Kloiber allegedly is the only witness to the incident. Also, the plaintiffs

---

[1]   Argonant Investigations also took recorded statements of four additional employees of the defendants after suit was filed and in anticipation of litigation. None of those statements were produced to plaintiffs' counsel, nor are they sought in the motion to compel.

assert that they cannot obtain the substantial equivalent of Mr. Kloiber's recorded statement without undue hardship.

The motion is fully briefed (Doc. 30; Doc. 31). The Court conducted an oral argument on July 11, 2022. The motion is ripe for disposition.

## II.  Legal Standards

"Unlike the attorney-client privilege, the work product privilege is governed, even in diversity cases, by a uniform federal standard embodied in the federal rules." *U.S. Fid. & Guar. Co. v. Barron Indus., Inc.*, 809 F. Supp. 355, 364 n.10 (M.D. Pa. 1992) (citing *United Coal Cos.*, 839 F.2d at 966). "The work product doctrine is governed by a uniform federal standard set forth in Fed. R. Civ. P. 26(b)(3) and 'shelters the mental processes of the attorney, providing a privileged area within which he can analyze and prepare his client's case.'" *In re Cendant Corp. Sec. Litig.*, 343 F.3d 658, 661–62 (3d Cir. 2003).

> The purpose of the work-product doctrine differs from that of the attorney-client privilege. . . . [T]he attorney-client privilege promotes the attorney-client relationship, and, indirectly, the functioning of our legal system, by protecting the confidentiality of communications between clients and their attorneys. In contrast, the work-product doctrine promotes the adversary system directly by protecting the confidentiality of papers prepared by or on behalf of attorneys in anticipation of litigation. Protecting attorneys' work product promotes the adversary system by enabling

> attorneys to prepare cases without fear that their work product will be used against their clients.

*Westinghouse*, 951 F.2d at 1427–28. Moreover,

> the doctrine is an intensely practical one, grounded in the realities of litigation in our adversary system. One of those realities is that attorneys often must rely on the assistance of investigators and other agents in the compilation of materials in preparation for trial. It is therefore necessary that the doctrine protect material prepared by agents for the attorney as well as those prepared by the attorney himself.

*United States v. Nobles*, 422 U.S. 225, 238–39 (1975) (footnote omitted).

Thus, under Rule 26(b)(3), the work-product doctrine shields from discovery "documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent)." Fed. R. Civ. P. 26(b)(3)(A). "In distinguishing between proceedings which qualify as litigation and those that do not, the adversarial nature of the proceeding is characteristic of litigation." *In re Rail Freight Fuel Surcharge Antitrust Litig.*, 268 F.R.D. 114, 117 (D.D.C. 2010). Although a common hallmark of litigation is whether "the parties have the right to cross-examine witnesses or to subject an opposing party's presentation of proof to equivalent

4

disputation," see *United States v. Am. Tel. & Tel. Co.*, 86 F.R.D. 603, 627 (D.D.C. 1980),

> [t]he proper focus should be whether the proceeding required the lawyer to function as lawyers usually do at a trial so that the proceeding can be classified as "litigation." This properly segregates the transactional work of lawyers who draft contracts or provide legal advice from lawyers who have to represent clients before tribunals that have the power to adjudicate their clients' rights, whatever the nature of the proceeding. If the tribunal has the power to adjudicate those rights and demands that the party before it either make a certain showing or disprove a particular allegation, the process is adversarial by its very nature and surely qualifies as litigation.

*Rail Freight Fuel Surcharge*, 268 F.R.D. at 118; *see also Restatement (3d) Lawyers* § 87 cmt. H ("In general, a proceeding is adversarial when evidence or legal argument is presented by parties contending against each other with respect to legally significant factual issues.").

Rule 26(b)(3) establishes two categories of protection: fact work product and opinion work product. "Fact work product is discoverable only upon a showing [of] 'substantial need' and by demonstrating that one cannot otherwise obtain the 'substantial equivalent' of such materials without 'undue hardship.'" *In re Linerboard Antitrust Litig.*, 237 F.R.D. 373, 381 (E.D. Pa. 2006) (quoting Fed. R. Civ. P. 26(b)(3)). Opinion work product, "which consists of 'mental impressions, conclusions, opinions, or

legal theories of an attorney,' is afforded almost absolute protection" and it "is discoverable 'only upon a showing of rare and exceptional circumstances.'" *Linerboard*, 237 F.R.D. at 381 (quoting *Cendant*, 343 F.3d at 663).

Waiver of the work-product doctrine also works differently than waiver of the attorney-client privilege. Unlike the attorney-client privilege, where disclosure to a third party waives the privilege unless the disclosure is necessary to further the legal representation, "the work-product doctrine serves instead to protect an attorney's work product from falling into the hands of an adversary," and thus "disclosure must enable an adversary to gain access to the information" for it to constitute waiver of work-product protection. *Westinghouse*, 951 F.2d at 1428; *see also Miller*, 104 F.R.D. at 445–46.

Finally, we note that,

> [o]rdinarily, the work-product doctrine should only be applied after it is decided that attorney-client privilege does not apply. This is because the work-product doctrine applies only to "documents and tangible things otherwise discoverable." If the attorney-client privilege applies to a particular item, it is absolutely undiscoverable and the work-product rule does not apply.

*Robinson v. Texas Automobile Dealers Ass'n*, 214 F.R.D. 432, 442 (E.D. Tex. 2003) (citations omitted) (quoting Fed. R. Civ. P. 26(b)(3)), *vacated in part on other grounds by* 2013 WL 21911333 (5th Cir. July 25, 2003) (mem.).

### III. Discussion

Guided by the standards set forth above, Fed. R. Civ. P. 26(b)(3) requires that we consider three questions in determining whether Mr. Kloiber's statement at issue in this case is discoverable: (1) whether the statement was made in anticipation of litigation; (2) whether the plaintiffs have shown substantial need of the statement; and (3) whether the plaintiffs are unable, without undue hardship, to obtain the substantial equivalent of the statement. *See Brown v. Nicholson*, 2007 WL 1237931 *2 (E.D. Pa. Apr. 25, 2007). During oral argument, the plaintiffs conceded that the statement is work product but its production falls within exceptions to the rule.

#### *a. Was the statement made in anticipation of litigation?*

Here, the plaintiffs concede that Mr. Kloiber's recorded statement was made in anticipation of litigation as it was obtained by defense counsel's investigator approximately four (4) months after suit was filed.

(Doc. 30, at 5). We also note that the statement in question was taken just under two years after the date of the incident.

### b. Have the plaintiffs established substantial need to obtain the statement?

The plaintiffs argue that they have a substantial need to obtain the recorded statement of Mr. Kloiber because Mr. Kloiber's alleged account that the plaintiff, Ryan Whitmore, was injured on his second attempt at riding the FlowRider forms the basis of the defendants' primary defense that Mr. Whitmore failed to heed Mr. Kloiber's warnings. Additionally, the plaintiffs contend that Mr. Kloiber is the defendants' only eye-witness to this incident. Finally, they argue that as there is no video of the incident, the outcome of the case will largely turn on the credibility of the witnesses on the date of the incident. In support of their position, the plaintiffs rely upon *McCann v. Miller,* Civil Action No. 08-561, 2009 WL 1941206 *2 (E.D. Pa. July 6, 2009), where the court held that the plaintiff had a substantial need for *contemporaneous* statements of the defendant's employees because the outcome of the case "will largely turn on credibility and witness accounts of the incident."

The defendants do not directly address this prong of the rule. Rather, the defendants refer to "plaintiff's claims of prejudice" which were recognized by The Third Circuit (Doc. 31, at 4) and which do not exist here.

Here, our facts are distinguishable from *McCann* in that the statement sought by the plaintiffs was not a contemporaneous statement made by Mr. Kloiber at or near the time of the incident. Rather, the recorded statement was taken almost two years after the event giving rise to the plaintiffs' cause of action. Our inquiry, however, does not end there.

### c. Can plaintiffs obtain the substantial equivalent of the statement without undue hardship?

The plaintiffs maintain that they cannot obtain the substantial equivalent of Mr. Kloiber's recorded statement without undue hardship. In support of this contention, the plaintiffs rely upon *McNulty v. Bally's Park Place, Inc.*, 120 F.R.D. 27, 30 (E.D. Pa. 1988), where the court ordered the production of a statement taken near the time of the plaintiff's alleged slip and fall injury from an unavailable and potentially deceased witness who was "the only witness to the plaintiff's fall" and

from whom only two statements were ever taken, both by the defendant. Here, the plaintiffs acknowledge that they have located Mr. Kloiber, but he refused to speak with the plaintiffs' agent and he directed all inquiries to defense counsel. (Doc. 30, at 7).

The defendants assert that the plaintiffs have not requested to depose Mr. Kloiber and that defense counsel would make Mr. Kloiber available for a deposition as a former employee of the defendants. (Doc. 31, at 4). Despite his unwillingness to speak with the plaintiffs' agent, Mr. Kloiber is otherwise available. Unlike the witness in *McNulty*, Mr. Kloiber's whereabouts are known to the plaintiffs, and defense counsel has represented a willingness to produce him for a deposition. Thus, we will deny the plaintiffs' motion to compel. However, this opinion is limited only to the facts presently before us. If circumstances should change during or after the anticipated deposition of Mr. Kloiber, those facts may yield a different result.

An appropriate order follows.

JOSEPH F. SAPORITO, JR.
U.S. Magistrate Judge

Dated: July 13, 2022